**NEW YORK DISTRICT COUNCIL OF CARPENTERS PENSION FUND, et al., Plaintiffs,**

v.

**Michael FORDE, et al., Defendants.**

**No. 11 Civ. 5474(LAP).**

United States District Court, S.D. New York.

March 26, 2013.

Raymond G. McGuire, Elizabeth O'Leary, Erica Eden Frank, Harlan J. Silverstein, Kauff McGuire & Margolis LLP, Charles R. Virginia, Marc Alan Tenenbaum, Virginia & Ambinder, LLP, Scott M. Himes, Ballard Spahr Stillman & Friedman LLP, New York, NY, for Plaintiffs.

Dino J. Lombardi, Lombardi & Salerno PLLC, Ira Treuhaft, Treuhaft & Zakarin, LLP, Thomas J. Curran, Doris Diana Short, Peckar & Abramson, P.C., Irving Cohen, Attorney-at-Law, New York, NY, Victoria Quesada, Quesada & Moore, LLP, Hamilton, NY, James R. Froccaro, Jr., Attorney at Law, Port Washington, NY, Niall Mac Giollabhui, Law Office of Jonathan R. Sennett, P.C., New Paltz, NY, Bruno Vincent Gioffre, Jr., Law Office of Bruno V. Gioffre, Jr., Harrison, NY, for Defendants.

Joseph Ruocco, East Stroudsberg, PA, pro se.

## MEMORANDUM & ORDER

LORETTA A. PRESKA, Chief Judge.

Plaintiffs (or "Funds") bring this action against a number of named Defendants in the above-referenced matter. Defendants Joseph Olivieri ("Olivieri"), EMB Contracting Corp., Michael Batalias, and Elisavet Batalias (collectively, "EMB"), and Michael Brennan ("Brennan") have each moved to dismiss Plaintiffs' First Amended Complaint [dkt. no. 30 ("Complaint" or "Compl.")] pursuant to Federal Rule of Civil Procedure 12(b)(6). Additionally, Brennan moves to strike a portion of Plaintiff's Complaint. For the reasons set forth herein, Defendants' motions to dismiss Plaintiffs' Complaint [dkt. nos. 62, 65, 97] and Brennan's motion to strike [dkt. no. 97] are DENIED.

## BACKGROUND

The Court takes as true the following factual allegations in the Complaint and draws all reasonable inferences in favor of Plaintiff. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir.2008).

Plaintiffs commenced this action on August 5, 2011, naming Olivieri and Brennan, among others, as defendants asserting claims pursuant to civil RICO and RICO conspiracy statutes, breach of fiduciary duty under ERISA, and New York common law fraud. [Dkt. No. 1.] Plaintiffs

filed an amended complaint November 21, 2011 [dkt. no. 30], naming additional defendants including Michael and Elisavet Batalias and their company EMB Contracting Corporation.

Olivieri filed a Motion to Dismiss on February 10, 2012 [dkt. no. 62]. (*See* Memorandum of Law in Support of Defendant Joseph Olivieri's Motion to Dismiss the Complaint, Feb. 10, 2012 [dkt. no. 64] ("Olivieri Memo").) EMB filed a Motion to Dismiss on February 13, 2012 [dkt. no. 65]. (*See* Memorandum of Law in Support of Defendants EMB Contracting Corp., Michael Batalias, and Elisavet Batalias' Motion to Dismiss the First Amended Complaint, Feb. 13, 2012 [dkt. no. 69] ("EMB Memo").) Plaintiffs filed an opposition in response to both Olivieri's and EMB's motions on March 21, 2012 [dkt. no. 78] ("Pl. First Opp."). Olivieri filed a reply memorandum on April 25, 2012 [dkt. no. 93] ("Olivieri Reply"). EMB filed a reply memorandum on April 25, 2012 [dkt. no. 95] ("EMB Reply"). Brennan filed his motions pro se on May 7, 2012. (*See* Memorandum of Law in Support of Defendant Michael E. Brennan's Motion to Dismiss the Complaint, May 7, 2012 [dkt. no. 97 at 3] ("Brennan Memo"); Defendant Michael Brennan's Motion to Strike, May 7, 2012 [dkt. no. 97 at 15] ("Brennan Mot. to Strike"). Plaintiffs filed an opposition to both motions on June 18, 2012 [dkt. no. 114] ("Pl. Brennan Opp."). Brennan filed a reply memorandum on August 8, 2012 [dkt. no. 122] ("Brennan Reply").

### Plaintiffs

Plaintiffs represent the jointly-administered employee benefit plans for the United Brotherhood of Carpenters and Joiners ("U.B.C.J.") who are appointed by the District Council of New York City and Vicinity of the U.B.C.J. ("District Council"). (Compl. ¶ 5.) Plaintiffs bring this action to recover monies they allege were embezzled from the Funds through a racketeering

conspiracy and enterprise that included former trustees of the Funds, union officials, and a number of contractors who furthered a scheme in which contractors made improper payments of money and other things of value to labor representatives in exchange for those representatives to deliberately fail to enforce applicable collective bargaining agreements. (*Id.* 1.)

### Defendant Olivieri

Defendant Olivieri was the Executive Director of the Association of Wall, Ceiling and Carpentry Industries of New York. (Compl. ¶ 19.) He served as a trustee of the Funds from approximately 2000 through approximately August 2009. (*Id.*) While he was a trustee of the Funds, he was associated with James Murray ("Murray"), sole owner of On Par Masonry ("On Par"), and knew of or assisted Murray in Murray's circumventing On Par's collective bargaining agreement ("CBA") with the District Council and local unions. (*Id.* ¶¶ 44–46, 87.) Murray and On Par engaged in bribery of union officials in exchange for assistance in evading requirements to pay contractual wage rates and make contributions to the Funds between 2000 and 2005. (*Id.* ¶¶ 89–90, 111–15.)

Specifically, the Complaint alleges the following actions taken by Olivieri. In January 2005, Murray loaned Olivieri $730,000, which Olivieri did not disclose to the Funds. (*Id.* ¶¶ 88, 93.) In March 2005, when Murray was being investigated for possible instances of union corruption and then served with a shut-down order, Olivieri assisted Murray in having the order withdrawn allowing On Par to remain open. (*Id.* ¶¶ 89, 115.) In April 2005, Olivieri also introduced Murray to the owner of a defunct contracting company so that Murray could continue operations under a different name while On Par was under investigation. (*Id.* ¶¶ 90, 115.) In July 2005, Olivieri approved a payment

plan for On Par to repay $750,000 of its delinquent contributions without disclosing to the Funds the above information. (*Id.* ¶ 91.)

In 2006, Murray fled the United States. (Compl. ¶ 115.) Murray was subsequently indicted and plead guilty in 2009 to charges of embezzling and conspiring to embezzle the assets of an employee benefit fund, bribing and conspiring to bribe union officials, offering to influence the operations of an employee benefit plan, and other charges. (*Id.* ¶ 51.) The superseding information and plea were unsealed on July 22, 2011. (*Id.*) In December 2007, Olivieri gave testimony denying his association with Murray and his involvement in, or knowledge of, Murray's takeover of the additional company. (Compl. ¶¶ 60, 86, 93.) In October 2010, Olivieri was convicted of perjury for providing this false testimony. (*Id.* ¶ 86.)

Plaintiffs name Olivieri in their Second and Seventh Causes of Action for a violation of the civil conspiracy provision of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1964(d), and for a breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104(a). Olivieri moves to dismiss the Complaint on the grounds that: (1) the delinquencies owed by On Par-which are the only damages alleged against Olivieri-are not recoverable due to a prior satisfaction of judgment between the Funds and On Par; (2) both the RICO and ERISA claims are time barred; and, (3) Plaintiffs fail to state a claim for RICO conspiracy.

### EMB Defendants

Defendants Michael and Elisavet Batalias are the owners of EMB Construction Corporation, a signatory to a CBA with the District Council under which it was required to make contributions to the Funds for covered work. (Compl. ¶¶ 36–

39.) Matthew Kelleher ("Kelleher"), a former employee of EMB, admitted in a plea allocution that during 2007 and 2008, he delivered cash and other things of value to union officials—including Defendant Brian Hayes, an employee of the District Council—on behalf of EMB so that EMB could pay carpenters off the books and avoid making the required contributions to the Funds. (*Id.* ¶¶ 40, 135, 138–39.)

Plaintiffs name EMB in their Second Cause of Action for a violation of the civil RICO conspiracy statute, 18 U.S.C. § 1964(d). EMB moves to dismiss the Complaint on the grounds that: (1) Plaintiffs fail to allege a RICO conspiracy claim; and (2) the claims are barred by the doctrine of *in pari delicto*.

### Defendant Brennan

Defendant Brennan was a member of the District Council from approximately 1994 through approximately 2004. (Compl. ¶ 25.) Brennan served as a "shop steward" for the Local 608 and held the responsibility of accurately recording the presence of carpenters working under a CBA at certain job sites and the total number of hours worked by each carpenter. (*Id.* ¶¶ 25, 10, 215.) The Trustees of the Funds relied *on* these reports in determining whether employers were making required contributions to the Funds. (*Id.* ¶ 216.) Brennan pleaded guilty in 2010 to charges of unlawful racketeering acts in violation of 18 U.S.C. § 1962(c). (*Id.* ¶ 110.) In his plea, Brennan admitted that he accepted payments of money and other things of value from On Par from 2000 to 2004 in return for the understanding that On Par would not be making required contributions to the Funds. (*Id.* ¶ 108.) Brennan assisted On Par by deliberately underreporting on shop steward reports the number of hours being worked on On Par job sites. (*Id.* ¶¶ 114, 217.) Brennan further admitted to destroying subpoenaed documents to impede an investigation by a

court-appointed independent investigator. (*Id.* ¶¶ 60(f), 109.)

Plaintiffs name Brennan in their First, Second, and Ninth Causes of Action for a violation of the civil RICO statute, 18 U.S.C. § 1962(c), a violation of the civil RICO conspiracy statute, 18 U.S.C. § 1962(d), and under New York common law fraud.

Brennan moves to dismiss the Complaint on the grounds that: (1) the delinquencies owed by On Par are not recoverable; (2) Plaintiffs' claims are time barred; (3) Plaintiffs fail to state a claim for RICO conspiracy; and (4) Plaintiffs' claim under New York common law fraud is time barred and lacks specificity. Brennan also moved to strike the allegations in paragraph 10 of the Complaint as being fabricated or misleading.

## DISCUSSION

### I. Standard of Review for a Motion to Dismiss

In assessing a motion to dismiss under Rule 12(b)(6), a court must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Goldstein,* 516 F.3d at 56. To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007)). A pleading that offers "labels and conclusions" or "a formalistic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955) (internal quotation marks omitted).

### II. Olivieri's Motion to Dismiss

#### A. Satisfaction of Judgment as against On Par

Olivieri first argues that the 2006 civil case brought by the Funds against On Par and Murray, in which a settlement was reached and eventually satisfied, along with the sentencing decisions in Murray's and Olivieri's criminal prosecutions, forecloses any recovery from the Funds of delinquent contributions owed by On Par—the only damages recoverable from Olivieri's conduct.[1] (Olivieri Memo at 7–10; 11–13.) Olivieri offers that the On Par civil case ("based on the same conduct, and in the same amount, as is alleged in the Complaint here") resulted in a default judgment against On Par, and a settlement was reached between On Par and Murray and the Funds whereby the Funds accepted $4,292,487 ("On Par Settlement Agreement").[2] (*Id.* at 9.) Olivieri points to the

---

**1.** Olivieri offers several documents attached as exhibits to his motion for judicial notice, including the On Par Settlement Agreement, the Satisfaction of Judgment, and the statements made at the sentencing hearings of Murray and Olivieri. (*See* Olivieri Reply at 2–3.) Olivieri suggests that should the Court not accept these documents, that the motion be treated as one for summary judgment. (*Id.* at 3.) Plaintiffs object to these documents being considered on a motion to dismiss and

to converting the motion to one for summary judgment. (Pl. First Opp. at 7–10.)

**2.** Olivieri argues that both the On Par civil suit and this litigation allege the same amount of damages ($9,455,283.17) relating to the On Par misconduct. (Olivieri Memo at 8 & n. 6.) The Complaint alleges that: "As a result of Murray's and On Par's conduct, the Funds were deprived of required contributions amounting to at least $9,455,283.17. At the least, $5,912,796.17 of the required contribu-

Satisfaction of Judgment as evidence that the debt was in fact satisfied. (*Id.* at 9, 12 (the settlement amount represented the "amount of fringe benefit liability reflected in a compilation of such liability prepared by the Funds forensic accountant").) Plaintiffs first argue that these documents are not properly before the court on a motion to dismiss. (Pl. First Opp. at 7–10.) Plaintiffs further claim that Olivieri has mischaracterized the On Par Settlement Agreement and Satisfaction of Judgment in determining that the Funds have been made whole and, regardless, that since Olivieri was not a party to those agreements, the Funds may still recover as against him. (Pl. First Opp. at 10–12.)

Further, Olivieri argues that the fact that no restitution was ordered in either the Murray or Olivieri criminal cases is further evidence that the debt has been fully satisfied. (*Id.* at 9–10.) Olivieri cites to his sentencing hearing before Judge Victor Marrero at which the court stated that "restitution is not an issue" because the Funds had been "made whole." (*Id.* at 12–13.) Olivieri argues that pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA"), it would have been mandatory for the sentencing court to order the payment of any remaining losses to the victim, the Fund. (Olivieri Reply at 4–5.) Plaintiffs argue that these statements are improperly considered for the purposes of this motion and that even should they be considered the Funds should not be bound by statements made in a sentencing proceeding where their interests were not represented. (Pl. First Opp. at 12.)

Finally, Plaintiffs counter that even if the On Par delinquencies are not available to them, Olivieri can still be held jointly and severally liable for all damages arising from the breaches of fiduciary duty and the civil RICO conspiracy. (Pl. First Opp. tions have not been recovered by the Funds." (Compl. ¶ 116.)

at 12–14.) Olivieri argues that he is not liable jointly and severally because he did not know or reasonably should not have known of those other portions of the conspiracy, outside of On Par's wrongdoing. (Olivieri Reply at 6.)

### i. *Extrinsic Evidence*

▮ Normally, courts are "required to look only to the allegations on the face of the complaint." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). The Court may also consider materials of which the plaintiff had notice and relied upon in framing the complaint, as well as materials of which judicial notice may be taken. *See* Fed.R.Evid. 201; *Kavowras v. N.Y. Times Co.,* 328 F.3d 50, 57 (2d Cir.2003); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991). In addition, the Court may consider materials outside the record if certain conditions for those materials are met including that it is clear on the record that no dispute exists regarding the authenticity or accuracy of the document and that it is clear that there exist no material disputed issues of fact regarding the relevance of the document. *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006). Consideration of a public record may be done in order "to determine what statements [they] contained" but *"not for the truth of the matters asserted." Roth,* 489 F.3d at 509 (emphasis in original) (citation and quotations omitted).

▮ A document may be deemed incorporated by reference when a complaint attaches it as an exhibit or includes any statements from those documents. To be incorporated, "the complaint must make a clear, definite and substantial reference to the document[ ]." *Smith v. Westchester Cnty.,* 769 F.Supp.2d 448, 460 (S.D.N.Y. 2011) (citation and quotations omitted). "Even where a document is not incorporat-

ed by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002) (citation and quotations omitted).

■ As to the On Par Settlement Agreement and the Satisfaction of Judgment, which are not public record, Plaintiffs reference these documents in only one paragraph of the Complaint. (Compl. ¶ 117 ("In or about 2006, having reason to believe that On Par owed monies to the Funds, the Funds brought a civil suit against On Par and Murray. As Murray, who had fled the United States, defaulted, the Funds were unable to discover additional information concerning conduct and facts material to the RICO claims alleged herein.").) The actual Settlement Agreement and Satisfaction of Judgment are not specifically referenced in the Complaint. *Smith,* 769 F.Supp.2d at 460. Although Olivieri may be correct that these documents are part of litigation "involving the same factual underpinnings of this case," (Olivieri Reply at 3), Olivieri makes no other argument as to why these documents are "integral" to the Complaint. Plaintiffs have not made any reference to the terms and effects of these documents in their allegations. *Chambers,* 282 F.3d at 152–53. Whatever settlement was reached in a prior case may be used to argue later that a damages award must be reduced; but it is not integral to determining whether Plaintiffs have stated a claim in their Complaint. Accordingly, the Court will not consider these documents on this motion.

■ The sentencing statements made in the criminal cases of Murray and Olivieri, although public record, are also not reviewable on a motion to dismiss. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991). "[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id.* Thus, documents of public record may not be used to contradict allegations made in the Complaint but may only be used to show that the proceeding actually took place. *See Connolly v. Dresdner Bank AG,* No. 08 Civ. 5018, 2009 WL 1138712, at *3–4 (S.D.N.Y. Apr. 27, 2009). Therefore, although the Court acknowledges that no restitution was ordered in from Murray or Olivieri, the Court will not consider statements made at those sentencing hearings for their truth.

### ii. The Failure to Order Restitution

■ The failure to order restitution from Murray or Olivieri with respect to losses caused by On Par does not foreclose Plaintiffs from bringing this civil litigation. Nothing in the MVRA prevents a victim who has not received restitution from instituting a separate civil action, and Olivieri cites to no case law excluding Plaintiffs' remedy. 18 U.S.C. § 3663A. The United States Code concerning restitution specifically provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in any Federal civil proceeding." 18 U.S.C. § 3664(j)(2). At this early stage in the litigation, the Court cannot hold that this litigation is foreclosed based on the determinations of the sentencing courts in the Murray and Olivieri criminal matters. Once discovery has been conducted, Olivieri may have an argument that based on the prior settlement any award for damages must be reduced in part or completely.

### iii. Joint and Several Liability

Plaintiffs argue that even if the damages related to the On Par conduct has been fully recovered, Olivieri may still be held

jointly and severally liable for other damages incurred throughout the RICO scheme. (Pl. First Opp. at 12–14.) The Court of Appeals has not addressed the issue of joint and several liability in civil RICO cases. However, other courts of appeals and district courts (including those in this Circuit) have found such defendants to be jointly and severally liable. (*See* Pl. First Opp. at 13 (citing examples).) Olivieri argues that in such cases, joint and several liability only extends to "those portions of the conspiracy that defendant knew or reasonably should have known he was joining." (Olivieri Reply at 6 (citing a Second Circuit case involving forfeiture in a criminal RICO proceeding).) Plaintiff counters that in those cases a "defendant who does not know the 'entire conspiratorial sweep' is nevertheless jointly and severally liable, in the civil context, for all acts in furtherance of the conspiracy." *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1562 (1st Cir.1994); (*see* Pl. First Opp. at 13.) Additionally, Plaintiff argues that Olivieri may be jointly and severally liable for any damages caused by the breach of fiduciary duty of certain other named defendants who are also fiduciaries under ERISA. (Pl. First Opp. at 13.)

■ The Court finds that there is support in the law of other Circuits, followed by some district courts in the Second Circuit, to find that Olivieri may potentially be held jointly and severally liable for additional damages outside of those caused by the misconduct of Murray and On Par.

### B. Claims are Time Barred

#### i. *RICO Conspiracy Claim*

■ Olivieri next argues that Plaintiffs' RICO conspiracy claim against him is barred by the four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Such a claim accrues when "a plaintiff knew or should have known of his injury." *Rotella v. Wood*, 528 U.S. 549, 553, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).

This claim was filed on August 5, 2011. Olivieri argues, then, that Plaintiffs can only recover for claims accruing after August 5, 2007. (Olivieri Memo at 13–14.) Because the allegations concerning Olivieri and On Par all occur in 2005, Olivieri argues that the claim is time barred. (*Id.*) Further, because Plaintiffs initiated a civil action against On Par and Murray in July 2006, that is the latest time that they could have discovered the injury. (*Id.* at 14.) Plaintiffs counter that the doctrine of equitable tolling due to fraudulent concealment applies to Olivieri's conduct. Plaintiffs argue that due to the wrongful concealment of the defendants' unlawful conduct, Plaintiffs could not have discovered the injury that underlies the RICO claims until they were publicly disclosed in August 2009, when the criminal proceedings involving certain of the defendants were unsealed. (*See, e.g.,* Compl. ¶ 63.)

■ In exceptional circumstances, equitable tolling doctrines such as the doctrine of fraudulent concealment may provide some relief from *Rotella's* injury discovery rule. 528 U.S. at 561, 120 S.Ct. 1075 (stating that equitable tolling is "the exception, not the rule"). However, "[t]he burden of demonstrating the appropriateness of equitable tolling ... lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir.2000). To invoke the doctrine of fraudulent concealment properly, a plaintiff must establish three elements including: (1) wrongful concealment by defendants (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim. *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir.1998); *Butala v. Agashiwala*, 916 F.Supp. 314, 319 (S.D.N.Y.1996). Plaintiff must plead each

of these elements with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. *See Butala,* 916 F.Supp. at 319 (citing cases).

Plaintiffs plead fraudulent concealment of the wrongdoing of Olivieri throughout the Complaint. Plaintiffs allege that: Olivieri introduced Murray to the owner of the defunct construction company in order to continue operations while On Par was under investigation in August 2005 (Compl. ¶¶ 90, 115); Olivieri lied under oath in December 2007 to conceal his association with Murray and On Par (*Id.* ¶¶ 60(c), 86); and Olivieri approved a payment plan for On Par in July 2005 (*Id.* ¶¶ 50, 87). Further, Plaintiffs argue that because Olivieri was a fiduciary of the Funds, in his position as trustee, failure to disclose material information may also toll the statute of limitations. (Pl. First Opp. at 25–26 (citing *Lenz v. Associated Inns & Rests. Co. of Am.,* 833 F.Supp. 362, 372 (S.D.N.Y.1993)).)

▮ Taking the allegations of the Complaint as true, the facts alleged by Plaintiffs are sufficient to establish wrongful concealment by defendant Olivieri of the RICO injury, and those facts have been plead with particularity. Olivieri's untruthful testimony in December 2007 and his participation in assisting Murray in continuing his business while under investigation through a front company are examples of such wrongful concealment. (Compl. ¶¶ 60(c), 86, 90, 115). Plaintiffs have also alleged that Olivieri successfully had the stop order served by the independent investigator against On Par withdrawn, thereby steering suspicion away from the company. (*Id.* ¶ 89.) The fact that this conduct is the same conduct alleged to constitute the basis for the action itself does not detract from the additional effect the conduct had in concealing the racketeering scheme from Plaintiffs. (Olivieri Reply at 9); *see State of N.Y. v.*

*Hendrickson Bros., Inc.,* 840 F.2d 1065, 1083 (2d Cir.1988) ("[T]he purpose of the fraudulent-concealment doctrine is to prevent a defendant from 'concealing a fraud, or ... committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it.'") (citation omitted).

Further, Plaintiffs have alleged that Olivieri, in his position as a fiduciary, failed to disclose material information or perform his duties to uphold On Par's CBA. (*Id.* ¶¶ 87, 90–92.) His failure to disclose the large loan from Murray while still performing supervisory duties, such as approving a payment plan and having the stop order withdrawn against On Par, was in itself an attempt to conceal fraudulently both his association with Murray and the latter's wrongdoing. As Olivieri was in a position of trust within the Fund, the Fund had no reason to suspect that wrongdoing underlay the activities done in the usual course of business. *See Zola v. Gordon,* 685 F.Supp. 354, 364–65 (S.D.N.Y.1988) ("The plaintiffs, the victims of the defendant's fraud, are entitled to rely on their confidential relationship with [defendant] to toll the statute of limitations until some event [occurs] which would normally awaken suspicion in the[m].") (citation and internal quotations omitted).

Plaintiffs have also alleged facts sufficient to establish that the wrongful concealment actually prevented Plaintiffs from discovering the claim and that Plaintiffs exercised due diligence throughout the period to be tolled. Olivieri argues that because Plaintiffs brought an ERISA collections action against On Par and Murray in 2006 for payments due (Compl. ¶ 117), Plaintiffs should have been on notice then of the injury. (Olivieri Memo at 14.) However, Plaintiffs allege that those collections actions "alleged relatively straightforward breach of contract and fraud

claims" against On Par and Murray alone. (Compl. ¶ 117; Pl. First Opp. at 30.) Because Olivieri had been concealing his relationship with Murray and On Par (Compl. ¶ 91–93), nothing alleged in the Complaint suggests that the failure of On Par to perform under the CBA should have alerted Plaintiffs to Olivieri's misconduct or to the racketeering scheme as a whole. Although it is very possible that the facts related to Olivieri and other defendants may have been uncovered during the 2006 litigation, because Murray fled the country and Plaintiffs were awarded a default judgment, (*id.* ¶ 117), there was no such opportunity for Plaintiffs to investigate further through discovery. (Pl. First Opp. at 30.)

Additionally, although Murray was indicted in May 2006 (Compl. ¶ 50), those charges only set forth Murray's embezzlement of the funds by paying "cash to workers employed by On Par, [ ] violat[ing] the terms of the collective bargaining agreement." (Indictment, *United States v. Murray,* No. 06 Cr. 443 (S.D.N.Y. May 24, 2006) ¶ 2 (Silverstein Declaration, Mar. 21, 2012, Ex. 1) (incorporated by specific reference in the Complaint ¶ 50) ("Indictment").) This is the same conduct that led Plaintiffs to bring a collections action against Murray and On Par. The indictment does not indicate Murray influenced or took advantage of relationships with union officials in order to assist in making the CBA violations, and in fact sets out simply that Murray paid workers cash instead of reporting their earnings. As Plaintiffs point out, no other names, including Olivieri, appear in the indictment. (Pl. First Opp. at 31.) Indeed, Olivieri's perjured testimony in 2007 that he had no association with Murray and On Par, (Compl. ¶ 86), further led suspicions away from his involvement.

Plaintiffs have also plead due diligence. Plaintiffs have alleged that they performed audits and brought the collections action against On Par and Murray, an action in which they may have uncovered further information had Murray not defaulted. (Compl. ¶¶ 62, 117, 128, 133.) During these actions they allege they investigated further the; reach of the fraud among other contractors. (Pl. First Opp. at 31–32.) Many of those deposed plead their Fifth Amendment right to remain silent. (Compl. ¶¶ 60, 128, 133.)

Finally, because the defense of fraudulent concealment is ultimately a fact-intensive determination as to the reasonableness of Plaintiffs' ignorance to the injury, the determination would be premature on this motion to dismiss. *Fuji Photo Film U.S.A., Inc. v. McNulty,* 640 F.Supp.2d 300, 320 n. 149 (S.D.N.Y.2009). Plaintiffs have alleged facts at this stage that, taken as true, would equitably toll the statute of limitations until at least August 2009, when Olivieri's and other defendants' indictments were unsealed. (Compl. ¶¶ 52, 63.)

ii. *ERISA Fiduciary Duty Claim*

Olivieri also argues that the statute of limitations for ERISA claims bars Plaintiffs' claim for breach of fiduciary duty. The statute of limitations for breach of fiduciary duty actions brought under ERISA provides:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

*except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.*

29 U.S.C. § 1113 (emphasis added). Olivieri alleges that under subsection (1), Plaintiffs are barred under this statute because the "last action which constituted a part of the breach" was alleged to be in July 2005, more than six years before the filing of this action in August 5, 2011. (Olivieri Memo at 15.) Plaintiffs argue that the proper application of the statute of limitations is six years from the date of Plaintiffs' discovery of the breach because the claim involves "fraud or concealment" pursuant to the last sentence of the statute. (Pl. First Opp. at 14–15.)

██ In *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 190 (2d Cir.2001), the Court of Appeals held that "the six-year statute of limitations should be applied to cases in which a fiduciary: (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." (citation omitted).

██ As discussed *supra* relating to the tolling of the RICO statute of limitations, Plaintiffs have alleged facts that would place Olivieri's conduct in the second category of *Caputo's* test. The conduct alleged as the basis for tolling the discovery of Olivieri's breach of fiduciary duty is the same conduct alleged as the basis for tolling the statute of limitations of the RICO claim. (Compl. ¶ 203; *id.* ¶¶ 86–94, 115.) As discussed, Plaintiffs have alleged this conduct sufficiently to establish that the

activities concealed Olivieri's misconduct from Plaintiffs and that Plaintiffs did not have knowledge of the basis of the injury despite due diligence. (*See supra* Part II.B.i.) Olivieri's failure to disclose the loan made to him by Murray, as well as his knowledge of Murray's activities that circumvented the CBA, were omissions that both constituted a breach of his fiduciary duty and delayed the Plaintiffs' discovery of the breach until his indictment was unsealed in 2009. (Compl. ¶¶ 87–94; *id.* ¶¶ 52–53.) These fraudulent activities have been pleaded with particularity as required under Fed.R.Civ.P. 9(b). *Caputo,* 267 F.3d at 191.

Finally, even under 29 U.S.C. § 1131(1)(B), Plaintiffs would not be barred. Plaintiffs have alleged that Olivieri remained a trustee, and in a position as fiduciary, until August 2009. (Compl. ¶ 19.) Plaintiffs have also alleged that Olivieri's breach of fiduciary duty included his failure to disclose material information about Murray and Olivieri's relationship with Murray. (*Id.* ¶ 65.) Therefore, Olivieri had a continuing obligation to disclose this material information as long as he was a trustee of the Funds, and "the latest date on which the fiduciary could have cured the breach or violation" was at the time he stepped down as fiduciary in August 2009. 29 U.S.C. § 1131(1)(B).

C. Failure to State a Claim for RICO Conspiracy

Finally, Olivieri argues that Plaintiffs have failed to state a claim for RICO conspiracy under 18 U.S.C. § 1962(d). Section 1962(d) of the RICO Act makes it "unlawful for any person to conspire to violate any of the provisions of subsection ... (c) of this section."[3] 18 U.S.C. § 1962(d).

*Satinwood, Inc.,* 385 F.3d 159, 182 (2d Cir. 2004). None of the defendants argues that

---

**3.** Proper pleading of a substantive RICO violation is required to sustain a RICO conspiracy claim. *First Capital Asset Mgmt., Inc. v.*

■ To establish a RICO conspiracy, a plaintiff must plead that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity. *United States v. Yannotti,* 541 F.3d 112, 121–22 (2d Cir.2008). However, in *Salinas v. United States,* 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), the Supreme Court determined that proof is not required that the defendant agreed that he would commit two or more predicate acts. *Id.* at 64, 118 S.Ct. 469. The Court of Appeals has recognized that under the law of *Salinas* other substantive elements of a RICO claim are not required to be plead as against defendants charged with RICO conspiracy pursuant to § 1962(d). *United States v. Applins,* 637 F.3d 59, 72–77 (2d Cir.2011). *Applins* summarized the state of the law in the Circuit for pleading a RICO conspiracy claim, determining that the standard that has been followed has been a broad one:

In *United States v. Zichettello,* 208 F.3d 72 (2d Cir.2000), we further explained that to be convicted as a conspirator under RICO, "one must be shown to have possessed knowledge of only the general contours of the conspiracy." 208 F.3d at 100; *see Yannotti,* 541 F.3d at 122 (stating that under *Salinas* "to be found guilty of RICO conspiracy, a defendant need only know of, and agree to, the general criminal objective of a jointly undertaken scheme"); ... *United States v. Ciccone,* 312 F.3d 535, 542 (2d Cir.2002) (stating that a "conspirator charged with racketeering conspiracy need not commit ... the predicate acts ... to be found guilty of the racketeering conspiracy, for it suffices that he adopt [ ] the goal of furthering or facili-

tating the criminal endeavor") (internal quotation marks omitted); *United States v. Rastelli,* 870 F.2d 822, 828 (2d Cir.1989) (stating that a defendant may agree to join a RICO conspiracy without knowing the identities of "all the other conspirators" and without "full knowledge of all the details of the conspiracy").

*Applins,* 637 F.3d at 75; *see also Salinas,* 522 U.S. at 63, 118 S.Ct. 469 ("There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.'") (citation omitted).

■ Under this liberal pleading standard for conspiracy, Plaintiffs have plead sufficient facts to allege plausibly that Olivieri agreed to join the conspiracy. Indeed, a defendant's agreement to join a conspiracy can "be inferred from circumstantial evidence of the defendant's status in the enterprise or knowledge of the wrongdoing." *First Interregional Advisors Corp. v. Wolff,* 956 F.Supp. 480, 488 (S.D.N.Y.1997).

The Complaint alleges that Olivieri knew that Murray had been circumventing the CBA by paying bribes to labor representatives. (Compl. ¶ 87.) The Complaint alleges facts that would imply an agreement between Olivieri and Murray to assist in various acts underlying the substantive RICO claim by concealing, among other things, Murray's embezzlement of the Funds by failing to make contributions. The agreement can also be inferred based

---

the underlying substantive RICO claim has not been sufficiently plead in the Complaint. (*See* First Claim for Relief, Compl. ¶¶ 149–64.) The Court determines that the substantive RICO claim has been sufficiently plead in that the Complaint contains allegations of miscon-

duct of an enterprise through a pattern of racketeering activity, as those elements are defined in this Circuit. 18 U.S.C. § 1962(c); *DeFalco v. Bernas,* 244 F.3d 286, 306 (2d Cir.2001).

on the allegations that Olivieri assisted Murray in evading, through different methods, the investigation into Murray's corrupt practices by getting the stop order withdrawn, assisting Murray in the secret takeover of another construction company, and the failure to disclose a loan Murray had made to him. (Compl. ¶¶ 87, 88, 92, 115.) Additionally, the fact that Olivieri committed perjury, a crime to which he was later convicted, to cover up, rather than explain away, his relationship with Murray and On Par (*Id.* ¶ 86), leads to a plausible inference that Olivieri knew of and agreed to act in support of the "general contours of the conspiracy." *Zichettello,* 208 F.3d at 100.

Accordingly, the Court finds that as to defendant Olivieri Plaintiffs have sufficiently plead the Second Cause of Action for RICO conspiracy and the Seventh Claim for breach of fiduciary duty, and Olivieri's motion to dismiss these claims as against him is denied.

### III. *EMB's Motion to Dismiss*

#### A. Failure to State a Claim for RICO Conspiracy

##### i. *Failure to Allege an Enterprise*

The EMB Defendants first argue that Plaintiffs have failed to state a claim for RICO conspiracy as against them because they have failed to allege the existence of an enterprise. (EMB Memo at 5–7.) However, as discussed above, under *Salinas,* to plead a conspiracy RICO claim, the element of an enterprise is not required. *Applins,* 637 F.3d at 75. Again, to plead conspiracy with respect to a defendant in this Circuit, Plaintiffs must show that defendant "possessed knowledge of only the general contours of the conspiracy," *Zichettello,* 208 F.3d at 100, and that defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity, *Yannotti,* 541 F.3d at 121–22. The "general contours" of

the alleged conspiracy was to embezzle money from the Funds through a continued scheme of bribing labor representatives in order to avoid making required contributions to the Fund under the CBA. (Compl. ¶ 47.) To further this end, Plaintiffs have alleged that EMB agreed to commit bribery and embezzlement through its employee. (*Id.* ¶¶ 99, 134, 135, 138, 139.) Plaintiffs allege that defendant Kelleher, a former employee of EMB, has admitted in a criminal proceeding brought against him that he paid bribes at the direction of his employer so that EMB could profit by paying carpenters off-the-books to avoid making required contributions to the Funds. (*Id.* ¶ 138.) This allegation is supported by the many examples of labor representatives taking similar bribes from contractors to the same end. (*Id.* ¶¶ 95, 100, 135.) Further, it can be inferred that Kelleher was working on behalf of his employer because EMB reaped the benefits of avoiding the CBA-required contributions as a business. It is plausible, based on the allegations in the Complaint as against Kelleher that EMB would have been aware of the company's failure to report the workers' hours and make required contributions, as those activities are essential aspects of any business bound by a CBA. *See Zichettello,* 208 F.3d at 99 ("[W]e need inquire only whether an alleged conspirator knew what the other conspirators 'were up to' or whether the situation would logically lead an alleged conspirator 'to suspect he was part of a larger enterprise.'")

##### ii. *Failure to Allege Continuity*

EMB also argues that Plaintiffs have failed to allege a pattern of racketeering because the conduct lacks "continuity." (EMB Memo at 7–8.) EMB argues that under *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), a plaintiff must assert "that the

racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity" over a "substantial period of time", *id.* at 239, 242, 109 S.Ct. 2893, and that such continuity must be analyzed "with respect to each defendant individually," *First Capital Asset Mgmt.*, 385 F.3d at 180. EMB argues that because the conduct alleged against them is "less than the minimum two years required by the Second Circuit to show a pattern of racketeering," Plaintiffs' claim should fail. (EMB Memo at 8.)

 EMB is correct that continuity over a substantial period of time is required to establish a pattern of racketeering in this Circuit, *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir.1999), but such a requirement is not attached to a claim for RICO conspiracy as to each particular conspiracy defendant. The *Salinas* Court established the differences between a claim under the substantive RICO statute and one under the conspiracy statute, determining that a "person ... may be liable for conspiracy even though he was incapable of committing the substantive offense" and that "one can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense." 522 U.S. at 64–65, 118 S.Ct. 469. Further, *Applins* held that "a RICO conspiracy charge need not specify the predicate or racketeering acts that the defendants agreed would be committed." 637 F.3d at 81. Accordingly, a lack of continuity as to EMB's misconduct is not a legal basis to dismiss Plaintiffs' claim against EMB.

### B. Doctrine of *In Pari Delicto*

 Finally, EMB argues that Plaintiffs' suit is barred by the New York doctrine of *in pari delicto*, which prohibits wrongdoers from bringing claims against their cohorts. *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464–66, 912 N.Y.S.2d 508, 938 N.E.2d 941 (2010); (EMB Memo at 9–10.) To apply the doctrine successfully, the plaintiff must be an active, voluntary participant in the wrongful conduct and the plaintiff's wrongdoing must be at least substantially equal to that of the defendant. *BrandAid Mktg. Corp. v. Biss*, 462 F.3d 216, 218 (2d Cir.2006).

 The Court agrees with Plaintiffs that there is nothing on the face of the Complaint, or specifically set out in EMB's briefs, that would indicate this level of wrongdoing on the part of the Plaintiffs, historically or specific to this conspiracy, or that would require the conduct of former trustees of the Funds be imputed to the Plaintiffs themselves. (Pl. First Opp. at 48.) The Court agrees that the Complaint cannot be dismissed at this stage on the basis of *in pari delicto*. *See Buckley v. Deloitte & Touche USA LLP*, 06 Civ. 3291, 2007 WL 1491403, at *5 (S.D.N.Y. May 22, 2007) (noting the caution that should be taken when applying the doctrine in the context of a motion to dismiss "given the fact-specific nature of the issues addressed").

### IV. *Brennan's Motion to Dismiss*

Defendant Brennan's memorandum supporting his motion to dismiss Plaintiffs' Complaint states many of the same arguments as Defendant Olivieri. Accordingly, the Court will only address those legal arguments which are specific to Defendant Brennan.

### A. Satisfaction of Judgment as against On Par

Brennan first argues that the On Par Settlement and determinations made in related criminal prosecutions, including his own, bar Plaintiffs' from recovering from him. (Brennan Memo at 3–8.) As he makes identical arguments to Defendant Olivieri on this topic, the Court reiterates

that this argument is dependent on unreviewable extrinsic evidence, that the failure of the sentencing court to order restitution from Brennan does not foreclose civil recovery from him, and that he may be held jointly and severally liable for all losses owed by defendants in the alleged racketeering scheme. (*See supra*, Part II.A.)

## B. RICO Claim is Time Barred

As did Olivieri, Brennan similarly argues that Plaintiffs' RICO claim is barred under the four-year statute of limitations because Plaintiffs discovered the injury of delinquent dues of On Par in 2006. (Brennan Memo at 8–9.) Further, Brennan adds that he left the employment of On Par in 2004. (*Id.*)

Plaintiffs have alleged that conduct of Brennan, and other defendants, tolled the statute of limitations under the doctrine of fraudulent concealment. (Pl. Brennan Opp. at 12–20.) The legal standard to review the equitable tolling of the statute of limitations for RICO claims on the basis of fraudulent concealment is outlined *supra*, Part II.B.i.

Plaintiffs have sufficiently alleged wrongful conduct by Brennan that had the effect of fraudulently concealing the RICO conspiracy. Plaintiffs allege that Brennan destroyed subpoenaed documents in order to impede the court-ordered independent investigator in 2004. (Compl. ¶¶ 60(f), 109.) Further, as discussed *supra*, Part II.B.i, the conduct of Brennan's coconspirators further concealed the overall scheme in which Brennan was involved. *See Hendrickson Bros.*, 840 F.2d at 1083 (the "affirmative acts of concealment by [one defendant] were attributable to the other defendants as well") (antitrust case analyzing the equitable tolling doctrine of fraudulent concealment which has been applied to

the same analysis of the RICO statute of limitations, *see, e.g., Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988)).

Plaintiffs have also sufficiently alleged that they were prevented from discovering the nature of the claim against Brennan. Because Brennan was the "shop steward" representative for On Par, he argues that Plaintiffs should have been on notice of the racketeering activity in 2006 when they initiated a lawsuit in 2006 against On Par and Murray. (Brennan Reply at 10–11.) For many of the same reasons as stated above in the analysis of Olivieri's similar argument, *supra* Part II.B.i., there is nothing in the Complaint that indicates that suspicion would have arisen at that time as to Brennan's involvement with On Par's and Murray's evasion of CBA requirements. Again, although discovery in that civil case would have almost surely uncovered Brennan's involvement, because Murray fled the country resulting in a default judgment for Plaintiffs, no discovery was undertaken to lead to such a revelation. (Compl. ¶ 117.) Murray's 2006 criminal indictment is also silent as to Murray's bribing of union officials, and it does not name Brennan. (Indictment, *supra.*)

Finally, as discussed, Plaintiffs have plead due diligence. *Supra*, Part II.B.i. Accordingly, Plaintiffs have alleged facts at this stage that would equitably toll the statute of limitations until at least August 2009, when Brennan's and other defendants' indictments were unsealed. (Compl. ¶¶ 52, 63.)

## C. Failure to State a Claim for RICO Conspiracy [4]

Brennan argues that the Complaint is deficient in that it only alleges conduct

---

4. Brennan has not moved to dismiss Plaintiffs' First Cause of Action against him for

substantive RICO violation of 18 U.S.C. § 1962(c).

occurring after the racketeering activities had concluded. and that it fails to allege facts constituting an agreement. (Brennan Memo at 9–10.) As an initial matter, Brennan's argument that the Complaint only alleges conduct attributable to Brennan after the purported racketeering activities concluded seems to be based on Olivieri's identical argument. (*See* Olivieri Memo at 17–19.) This argument does not appear to apply to Brennan as his misconduct is alleged to have occurred between 2000 and 2004, (Compl. ¶ 108), which is precisely the same time period that the Complaint alleges the racketeering scheme took place, (Compl. ¶ 47).

In any event, under the state of the law outlined *supra*, Part II.C., Plaintiffs have sufficiently alleged Brennan made an agreement to participate in the alleged racketeering conspiracy. *See Applins*, 637 F.3d at 75. The Complaint alleges that Brennan pleaded guilty to a violation of the substantive criminal RICO statute, admitting that he accepted payments of money and other things of value from On Par while allowing On Par to violate the CBA and that he destroyed subpoenaed documents to impede the independent investigator. (Compl. ¶¶ 108–110.) These admissions are sufficient to conclude at this stage that Brennan's conduct forms the basis of an allegation of an agreement to participate in a racketeering conspiracy. Accordingly, Plaintiffs have alleged a sufficient claim as against Brennan for RICO conspiracy.

### D. New York Common Law Fraud Claim

#### i. *Claim is Time Barred*

 Brennan initially states that he "incorporates all of his previous time bar arguments into his time bar argument for Common Law Fraud." (Brennan Memo at 10.) The statute of limitations for common law fraud in New York is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213.

As discussed, *supra* Parts II.B.i., IV.B., in the context of the federal equitable tolling doctrine of fraudulent concealment, the Court has determined that Plaintiffs could not have reasonably discovered Brennan's fraud until his indictment was unsealed on August 5, 2009. Because the Court has already determined that Plaintiffs did not have actual knowledge of the fraud, the test under the New York common law fraud statute of limitations is whether Plaintiffs should be held to have had constructive knowledge. *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F.Supp.2d 250, 258–59 (S.D.N.Y.2005). However, because such a test is often fact-intensive, the Court of Appeals has held that it may be inappropriate to dispose of an action for this reason even on summary judgment. *Schmidt v. McKay*, 555 F.2d 30, 37 (2d Cir.1977). Thus, on the face of the Complaint, the Court determines at this stage that. Plaintiffs did not have actual or constructive knowledge of Brennan's fraud until August 2009. Because Plaintiffs filed this action on August 5, 2011, exactly two years after this discovery, they have filed their action in the nick of time, and this claim is not barred by the statute of limitations.

#### ii. *Claim Lacks Specificity*

 Finally, Brennan argues that the common law fraud allegations against him lack the required specificity. (Brennan Memo at 10–11.) To plead a claim for fraud under New York law, a plaintiff must allege "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to

rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996). Furthermore, where a cause of action is based in fraud, "the circumstances constituting the wrong shall be stated in detail." *See* C.P.L.R. § 3016(b); *see also Mandarin Trading Ltd. v. Wildenstein,* 16 N.Y.3d 173, 178, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011).

 Plaintiffs allege against Brennan, specifically, that he knowingly and intentionally made material misrepresentations of fact when he submitted false and fraudulent shop steward reports that underreported the number of workers' hours at the job sites at which he was a shop steward. (Compl. ¶¶ 215–17.) Plaintiffs further allege that such misrepresentations were made with the intent to deceive because Brennan knew that the Funds relied on his representations to their detriment and that these misrepresentations did in fact induce the Funds to fail to discover that additional monies were owed to them. (Compl. ¶¶ 217–19.) All of these allegations specifically include the nature of the misstatements (the job site reports) and the time period when these misstatements were made (repeatedly between 2000 and 2004). *See ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.,* 957 F.Supp. 1308, 1326 (S.D.N.Y.1997) ("Where, as here, a complaint alleges that specific, identifiable written materials concededly disseminated by a defendant contain misrepresentations upon which Plaintiffs relied, the Rule 9(b) pleading requirements concerning identification of the allegedly fraudulent statements, and specification of their time, place and speaker, are satisfied."). Therefore, Plaintiffs' claim against Brennan for common law fraud has been sufficiently pleaded.

## V. *Brennan's Motion to Strike*

### A. Standard of Review

 Rule 12(f) authorizes a court, either on its own or by motion of a party, to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are not favored, and in order "[t]o have redundant, immaterial or impertinent matters stricken from a pleading, the [movant] must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Metrokane, Inc. v. The Wine Enthusiast,* 160 F.Supp.2d 633, 642 (S.D.N.Y.2001) (citations and internal quotations omitted).

### B. Motion to Strike Paragraph 10

Brennan moves to strike portions of, or preferably in its entirety, paragraph 10 of the Complaint. Paragraph 10 states:

10. The District Council's CBA with contractors also generally authorized the District Council (or constituent local unions) to appoint a "shop steward" to each job. *The shop steward's principal duty was to be the daily "eyes and ears" of the District Counsel (or appointing union) and to report a contractor's violations of the CBA.* The shop steward was required to submit weekly reports, referred to as shop steward reports, to the constituent local union office identifying all carpentry-trade employees, including union and non-union members, and the hours they worked. *The Funds relied on the shop steward reports to ensure that contributions to, the Funds were being made for all covered work.*

(Compl. ¶ 10 (contested sentences emphasized).)

Brennan argues that the first sentence emphasized inappropriately quotes "eyes and ears" as if that phrase appears in the CBA, even though it does not. (Brennan Mot. to Strike at 4–7.) Brennan makes this conclusion because the term "shop steward" is quoted similarly, and that phrase is taken from the CBA. Brennan concludes, then, that the implication is that both phrases have been taken directly from the CBA, which is misleading and "frivolous at least, fraudulent at worst." (*Id.* at 6.) The Court disagrees that the fact that "eyes and ears" is in quotation marks is an attempt to mislead the Court to believe that this inaccurate statement appears in the CBA. It is clear that "eyes and ears" is a colloquial phrase used to summarize the general purpose of the shop steward's job on site. Brennan's motion to strike this statement is denied.

Brennan also argues that the final sentence, relaying that the Funds relied upon the shop steward reports, should be stricken because it is a "conclusory statement" which Brennan contests as false. (Brennan Mot. to Strike at 4.) Brennan claims that this statement is untrue because the shop steward report is submitted to the Business Manager with the District Council, who further audits the report; thus, it was the submission of the Business Manager on which the Funds relied. (*Id.*) Brennan's motion to strike this statement is also denied. This allegation made by Plaintiffs is a disputed issue of fact which is relevant to Plaintiffs' claims, and Brennan has failed to demonstrate that it is clearly false. *See Murchison v. Kirby,* 27 F.R.D. 14, 19 (S.D.N.Y.1961) ("A pleading should be stricken only when it appears beyond peradventure that it is sham and false and that its allegations are devoid of factual basis."); *see also Rampersad v. Deutsche Bank Sec., Inc.,* No. 02 Civ. 7311, 2004 WL 616132, at *4 (S.D.N.Y. Mar. 30, 2004) (denying motion to strike because it did "not appear beyond doubt that Plain-

tiff's allegations . . . lack any factual basis"). If it is later discovered that counsel for Plaintiffs failed to conduct a reasonable factual inquiry before filing the Complaint, then Brennan may bring an appropriate motion for sanctions at that time. *See Velez v. Lisi,* 164 F.R.D. 165, 167 (S.D.N.Y.1995) (denying motion to strike, but in so doing recognized that the "allegations may not pass Rule 11 scrutiny at a later stage in the litigation").

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiffs' Complaint [dkt. nos. 62, 65, 97] and Brennan's motion to strike [dkt. no. 97] are DENIED. Counsel shall confer and inform the Court by letter no later than April 10, 2013 how they propose to proceed.

SO ORDERED.